### SWIFT v. PORTLAND BRUSH & BROOM CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 29, 1906.)

No. 1,289.

PATENTS—INFRINGEMENT—CELL-CASE MACHINE.

The Swift patent, No. 622,403, for a cell-case machine for the manufacture of cell cases or fillers for crates used in the transportation of eggs or fruit. Claim 1 is void for lack of novelty and invention in view of the prior art. Claim 19, conceding its validity, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant was the complainant below, in a bill for infringement of letters patent No. 622,403 issued to him, April 4, 1899, for "cell-case machine." As stated in the patent, the "invention relates to the manufacture of cell-cases or 'fillers' for crates used in the transportation of fruit, eggs, etc.; one of its objects being to provide simple and efficient mechanism to automatically produce from flat paper webs a continuous fabric comprising rectangular cells." Twenty-five claims are contained in the patent, and upon motion for specification of the claims relied upon, 18 were so specified by the complainant. On this appeal, however (as in the hearing below), the charge of infringement is narrowed to two claims, numbered 1 and 19, which read as follows:

"(1) In a cell-case machine, the combination with feeding mechanism for a paper web, of perforating mechanism having means to produce a transverse series of unalined or divergent slots in said web, the corresponding slots of each series being longitudinally disposed in said web, mechanism to divide said web longitudinally in strips, mechanism to twist said strips at right angles to the plane of said web, and mechanism to converge said strips with said perforations in straight transverse alinement, substantially as set forth."

"(19) In a cell-case machine, the combination with feeding mechanism for the cell-case strips, of mechanism to notch or perforate said strips, a fixed conduit for said strips, and an oscillatory former adapted to bend the edges of the notches in said strips against the wall of said fixed conduit, substantially as set forth."

The facts bearing upon the issues, including the references, in so far as deemed material, are stated in the opinion.

Border Bowman, for appellant.

V. H. Lockwood, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The machine described in the patent (No. 622,403) is a complicated and useful combination of means to make egg cases or fillers of straw board to

be used in crating eggs. The face of the patent, with the array of claims allowed, gives the impression of invention of great merit; and the story of its capability in manufacturing the cases out of webs of straw board, is even more impressive. This view of the invention, however, is completely dispelled upon the introduction of numerous patent devices, which not only anticipate the mechanism and function of the patent means in all save minor details, but the want of novelty in respect of all claims upon which infringement was charged, except 1 and 19, is not disputed upon this appeal. So, it is neither necessary nor desirable to discuss the general mechanism, claims, or prior art, beyond such reference as may bear upon the narrow issues thus remaining. Nor is it needful to discuss the contention on behalf of the appellant that the appellees cannot be heard in denial of the validity of any of the claims, by reason of prior contract relations between the former and predecessors of the latter, as it is plain that the proof raises no such question, were it otherwise material.

1. The essential element of claim 1 is the means for perforating the paper web when fed into the machine, described in the claim as "means to produce a transverse series of unalined or divergent slots in said web, the corresponding slots of each series being longitudinally disposed in said web." The object of the perforations was for interlocking or engagement of the strips to form the cell, and it is conceded that means and function were old, except in the special feature of alinement. It is contended by the appellant, that "claim 1 by providing for the slots out of alinement and converging the longitudinal strips, so that the cell would be greater in height than in width, did not interfere with the proper interengagement of the cells." The divergence, as indicated in the drawing, is hardly appreciable to the observer—upon measurement is shown not to exceed two-sixteenths of an inch divergence from a straight line in the total length of the series, 15½ inches —and neither meaning nor function is apparent in claim or specification without careful study. Upon the argument, the utility of this provision is pointed out in reference to the particular form of slot made by the patent means, but the divergence is without value or function in the appellees' different form of slot; and it is obvious that the seeming fact of like divergence in the latter was an inadvertence. We are satisfied, however, that the provision upon which this claim rests is without novelty, under the disclosure of like divergence in the drawings of Bates' patent, No. 570,621; and that, in any view, invention is not involved in the obvious expedient to adapt the means to the slots of the patent device.

2. The elements of claim 19 are feeding and perforating means, the fixed conduit for the strips, and the so-called "oscillatory former," further described as "adapted to bend the edges of the notches in said strips against the wall" of the conduit; and the only feature for which novelty is contended is this "former."

The question of infringement hinges, as stated in the appellant's brief, on the construction of this claim—in fact, upon interpretation of the last mentioned element as referred to in the claim and specifications. If this element is limited to the terms of the claim, as "an oscillatory

former adapted to bend the edges" etc., it is conceded that the appellee does not infringe. While the forming or bending means thus provided in the patent structure is needful to bend the special form of notch and slot adopted for the strips of strawboard, so that the mouth of the slot in the upper strip is widened to receive and interlock with the slot of the other (longitudinal) strip, the appellees' machine cuts off and removes these edges in both strips, making V-shaped openings— bending is not required, and the patent means referred to is not present in the machine. The contention is, however, that another function is provided in this means of the patent, namely, in means referred to in the argument as a "flipper bar," to "insure the proper feeding of the strip by bending the web against the wall of the fixed conduit;" and that the appellee employs like means for like function. Assuming, however, that such identity appears, the interpretation which is thus sought for this claim is strained and unauthorized. It ignores both name and description of the means and the function attributed to it; and as well, the only feature which is pointed out for this element in the specifications. Thus various references in the specifications are unmistakable in their meaning:

(1) "The web from which the transverse strips are to be formed is passed. between feed rollers to suitable mechanism and perforated with a series of slots arranged transversely with respect to said web. in a straight line. The edges of said slots are then bent to facilitate engagement thereof with the notches in the longitudinal strips, with the notches of which said transverse web is in registry. A strip of width equal to the longitudinal strips with which said web is engaged is then cut transversely from said web and passes thence as a portion of the cell-case fabric.

(2) "Owing to the peculiar interlocking form of my improved filler-strips, it is necessary for their proper engagement that they should be prepared by opening the respective notches which are to be engaged before said engagement is effected. This preparatory bending of the notched edges is best shown in Fig. 23 and is effected as follows:

(3) "The edges, $y^2$, of the notches, $y^3$, in respective strips, Y', of the latter are bent, as shown in said Fig. 23, by means of the frame, P, which is mounted for oscillation upon its upper shaft member, P', in the bearings, p, upon the frame member, $A^6$. The lower bar, Px, of said frame is provided with forming plates, px, adapted to bend the edges, $y^2$ of said notches, $y^3$, over the corners, $p^2$, of the rear wall, g' of the conduit, G, and thus open said notches, $y^3$, for engagement with the notched strips, X'. See Fig. 23."

We are of opinion that the evidence fails to establish infringement of claim 19, under any reasonable construction of its import; and the issue upon its validity in view of the prior disclosures does not require consideration.

The decree of the Circuit Court accordingly is affirmed.